**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|   |   |   |
|---|---|---|
| | : | |
| IN RE: BEAZER HOMES USA, | : | CIVIL ACTION NO. |
| INC. | : | 1:07-CV-0952-RWS |
| ERISA Litigation, | : | |
| | : | |

**ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [59].

After reviewing the record, the Court enters the following Order.

**I. Background**[1]

Plaintiffs' Consolidated Amended Class Action Complaint for Violations

of the Employee Retirement Income Security Act ("Complaint") [50] alleges

that Defendants, fiduciaries of the Beazer Homes USA, Inc. 401(k) Plan (the

"Plan"), breached their fiduciary duties under ERISA by maintaining the Plan's

large investment in Beazer Homes USA, Inc. ("Beazer" or the "Company")

stock in the Plan from July 28, 2005 to May 12, 2008 (the "Class Period") when

---

[1] The facts contained herein reflect Plaintiffs' contentions as set forth in the Complaint and in the Response to Defendants' Motion to Dismiss [61]. In examining the merits of a motion to dismiss, the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Conner v. Tate, 130 F.Supp.2d 1370, 1373 (N.D.Ga.2001).

they knew or should have known that the stock was an imprudent retirement investment. As a result, the Plan lost at least $46 million during the Class Period.

Plaintiffs allege that Defendants failed to take action to protect the Plan despite: (1) the large decline in the value of Beazer stock; (2) the deteriorating financial circumstances faced by Beazer during the Class Period; (3) operational and financial mismanagement at the Company; (4) misleading statements and misrepresentations regarding Beazer's financial condition; and (5) the artificial inflation of Beazer stock.

## A.    The Plan

The purpose of the Plan was to enable participants to save for their retirement. The 401(k) Committee was expressly charged with responsibility for selecting prudent investment options, eliminating imprudent options, and deciding how to invest Beazer's matching contributions. As such, the Plan offered a number of different investment options selected by the 401(k) Committee.

One of the options selected by the Plan fiduciaries was Beazer stock. From the beginning of the Class Period until November 2, 2007, the Plan permitted, but did not require, Beazer stock as a Plan investment.  After

2

November 2, 2007, Beazer sought to require the Beazer Stock Fund to be available as an investment option, but suspended all new investment in Beazer stock on December 7, 2007. The Plan continued to hold Beazer stock after this date, which caused the Plan to incur significant additional losses as the value of the stock continued to decline. Beazer made contributions to the Plan in the form of Beazer common stock from July 28, 2005, the beginning of the Class Period, until January 1, 2006.

**B.      The Defendants**

The Complaint divides the Defendants into several different fiduciary categories. The "Prudence Defendants" are the Company and the 401(k) Committee and its individual members[2] (the "401(k) Committee Defendants"). The "Monitoring Defendants" are the Company, Ian McCarthy[3], Brian Beazer[4],

---

[2] Members of the 401(k) Committee were: Fred Fratto, the Company's Senior Vice President, Human Resources during the Class Period and Chairperson of the 401(k) Committee; Jennifer Jones, the Company's Vice President, Employee Services during the Class Period; George Schulmeyer, the Company's Southeast Regions CFO during the Class Period; and Peggy Caldwell, the Company's Vice President and Assistant Counsel during the Class Period.

[3] McCarthy is the Chief Executive Officer of the Company and served in this capacity during the class period.

[4] Beazer was the Non-Executive Chairman of the Company's Board of Directors.

AO 72A
(Rev.8/82)

and the Compensation Committee and its individual members[5] (the "Compensation Committee Defendants").  The "Disclosure Defendants" are the Company, McCarthy, and Brian Beazer.  The "Communication Defendants" are the Company, McCarthy, and the 401(k) Committee Defendants.

## C.     The Counts

Count I alleges that the Prudence Defendants[6] breached their fiduciary duties of prudence and loyalty under ERISA by continuing to offer Beazer stock as an investment option, failing to divest the Plan of Beazer stock, and making contributions with Beazer stock when it was an imprudent investment. Count II alleges that the Monitoring Defendants breached their duty to monitor their fiduciary appointees.  Count III alleges that the Disclosure Defendants failed to disclose necessary information to co-fiduciaries.  Count IV alleges that the Communications Defendants failed to provide participants with complete and accurate information sufficient to inform them of the true risks associated

---

[5] Members of the Compensation Committee were Katie J. Bayne, Larry T. Solari, and Stephen P. Zelnak, Jr.

[6] Plaintiffs have voluntarily dismissed their prudence claim against McCarthy and the Compensation Committee Defendants pending further discovery.  See Plaintiffs' Response [61] at 4 n.4.

4

with investing Plan assets in Beazer stock. Count V alleges that all Defendants are subject to co-fiduciary liability under ERISA.

## D.    Allegations of Imprudence

Plaintiffs allege that beginning in 2004 and continuing through the end of the Class Period, warning signs about the grave risks in the housing market were apparent. During this time, industry observers expressed concern about mortgage origination practices which allowed individuals to obtain mortgages for which they were not qualified. In 2005, the percentage of subprime mortgage loans in foreclosure increased tremendously, and the Center for Responsible Lending predicted the worst foreclosure crisis in the modern mortgage market. Plaintiffs allege that by 2007 these warning signs were widespread and several subprime mortgage lenders filed for bankruptcy.

Throughout the Class Period Beazer publicly announced confidence in its future growth opportunities and repeatedly made positive statements about its financial position. This despite the fact that it was one of the nation's largest residential homebuilders and also engaged in mortgage origination services by extending loans to Beazer home buyers through its wholly-owned subsidiary Beazer Mortgage Corporation.

5

Plaintiffs allege that beginning in February 2007, the truth about Beazer's financial position and unlawful business practices began to become public. Beazer's General Counsel was fired for a pattern of conduct that included violations of Company policies. In March of 2007, reports emerged that Beazer had falsified loan applications and issued larger loans than individuals could actually afford. Federal agencies launched a criminal investigation into Beazer's loan origination practices, but Beazer maintained that its internal investigations had not found any evidence of wrongdoing. Subsequently in April 2007, the Audit Committee of Beazer's Board of Directors began an internal review of its loan origination business. In June 2007, Beazer fired its Chief Accounting Officer for attempting to destroy documents in violation of the Company's document retention policy.

In October 2007, Beazer announced that it would have to restate its financial statements for fiscal years 2004 through 2006, and for the interim periods of fiscal years 2006 and 2007, reporting that it had improperly recorded revenue and engaged in procedures that had violated generally accepted accounting principles. Beazer also stated that there was evidence that its subsidiary Beazer Mortgage's loan business had violated regulations governing federally insured loans since at least 2000. In November 2007, a shareholder

advisory group requested that the Board of Directors fire CEO Ian McCarthy, citing a failure of leadership. In February 2008, Beazer Mortgage announced it was no longer originating mortgages. It reported total losses for the first two quarters of 2008 that exceeded $360 million. The SEC also conducted an investigation of Beazer that ended with a settlement and a cease-and-desist order. The SEC concluded that Beazer had fraudulently misstated certain of its quarterly and annual net income figures and violated Federal securities laws.

Plaintiffs allege that Defendants, through publicly available warning signs and their positions within Beazer, knew or should have known that Beazer stock was an imprudent investment. Yet throughout the Class Period Defendants continued to offer Beazer stock as a Plan investment option, to maintain Plan investments in Beazer stock, and until January 1, 2006, to make matching contributions in Beazer stock. Plaintiffs also allege that Defendants did not investigate whether the warning signs portended any risk to Plan participants.

## II. Discussion

### A. Procedural Standard

#### 1. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

2.    Pleading Under ERISA

The prevailing view is that, as a general rule, a plaintiff need not meet

some heightened pleading requirement when bringing an ERISA claim. See,

e.g., In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 867 (S.D. Tex.

2004) (no heightened pleading requirement under ERISA); In re Enron Corp.

Sec., Derivative & "ERISA" Litig., 284 F. Supp.2d 511, 652 (S.D. Tex. 2003)

(same).  Rather, Plaintiffs need only meet the pleading  threshold of Rule 8(a),

which requires "a short and plain statement of the claim showing that [they are]

entitled to relief."  Fed. R. Civ.P.  8(a).

**B.    Brief Overview of ERISA and Relevant Remedial Provisions**

Congress enacted ERISA in 1974 in order to "assur[e] the equitable

character of [employee benefit plans] and their financial soundness." Cent.

States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559,

570, 105 S. Ct. 2833, 86 L. Ed. 2d 447 (1985).  In enacting ERISA, Congress

established minimum standards of fiduciary conduct for trustees, administrators

and others dealing with retirement plans.  ERISA defines a fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct

9

or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

An employer may sometimes act in a non-fiduciary capacity and is only subject to claims for breach of fiduciary duties when acting in a fiduciary capacity. Therefore, the threshold question for any claim of breach of fiduciary duty is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). The fiduciary function is not an "all-or-nothing concept" and a defendant is only a fiduciary to the extent that he exercises discretionary authority "with respect to the particular activity at issue." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005). "A person or entity becomes an ERISA fiduciary either [1] by being named as a fiduciary in written instruments that govern how an employee benefit plan is established or maintained, or [2] by exercising discretionary authority or control over the management, administration, or assets of a plan." In re Dynergy, Inc. ERISA Litig., 309 F. Supp. 2d at 872.

AO 72A
(Rev.8/82)

ERISA holds fiduciaries to a prudent man standard of care, which entails: (1) acting solely in the interest of the participants and beneficiaries; (2) "with the care, skill, prudence, and diligence . . . that a prudent man . . . would use . . .;" (3) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;" and (4) acting in accordance with the documents and instruments governing the plan unless doing so would violate other provisions of ERISA. 29 U.S.C. § 1104(a)(1). ERISA also contains specific provisions for eligible individual account plans ("EIAPs") such as the Plan at issue here. An EIAP is an individual account plan which is a profit sharing, stock bonus, thrift, or savings plan or an employee stock ownership plan ("ESOP"), which "explicitly provides for acquisition and holding of qualifying employer securities." 29 U.S.C. § 1107(d)(3)(A)-(B). In regards to EIAPs, a fiduciary does not violate "the diversification requirement . . . and the prudence requirement (only to the extent that it requires diversification)" by acquiring or holding "qualifying employer securities." 29 U.S.C. § 1104(a)(2).

**C. Count I - Failure to Prudently and Loyally Manage the Plan**

Defendants contend that Plaintiffs' prudence claim set forth in Count I "is simply a recharacterized diversification argument (*i.e.*, Plan accounts should not

have been invested in Beazer stock, but should have been invested in other investment options, thereby diversifying the Plan's assets)." (Brief in Support of Motion to Dismiss ("Def.'s Brief"), Dkt. No. [59-2] at 16). Defendants argue that Count I should be dismissed because ERISA exempts EIAPs, like the Beazer 401(k) Plan, from any diversification requirement and from the duty of prudence to the extent it requires diversification. (Id.). Plaintiffs respond that a fair reading of ERISA shows that it imposes a duty of prudence on the fiduciaries in this case, and that Plaintiffs allege a breach of that duty, not any duty to diversify. (Brief in Response to Motion to Dismiss ("Pl.'s Response"), Dkt. No. [61] at 10).

Count I of Plaintiffs' Complaint alleges fiduciary breaches against the Company, McCarthy, the Compensation Committee Defendants, and the 401(k) Committee Defendants. As an initial matter the Court must determine whether these Defendants were "acting as a fiduciary (that is, were performing a fiduciary function) when taking the action subject to complaint." Pegram, 530 U.S. at 226. Plaintiffs have already voluntarily dismissed their prudence claim against McCarthy and the Compensation Committee Defendants. (Pl.'s Response, Dkt. No. [61] at 4 n.4). Plaintiffs' claims against the Company must also be dismissed because the Company did not make decisions related to the

AO 72A
(Rev.8/82)

investment decisions of the Plan. To the extent that Plaintiffs are attempting to

hold the Company liable under a doctrine of respondeat superior, the Court will

not impose liability under ERISA on that ground. See Woods v. Southern Co.,

396 F. Supp. 2d 1351, 1370 n.10 (N.D. Ga. 2005) (expressing reservation about

imposing respondeat superior liability under ERISA, given absence of any

express contemplation of such theory within text or legislative history of

statute). Therefore, Count I is only proper as to "the 401(k) Committee, who

are responsible for administering the Plan, selecting the Plan investment

options, and monitoring the performance of those options." (Complaint at ¶

23).

The relevant portion of ERISA reads: "In the case of an [EIAP] . . . , the

diversification requirement . . . and the prudence requirement (only to the extent

that it requires diversification) . . . [are] not violated by the acquisition or

holding of . . . qualifying employer securities." 29 U.S.C. § 1104(a)(2). Three

Judges on the Northern District of Georgia have examined the question of

whether a claim for failure to diversify an EIAP can constitute a breach of the

duty of prudence and have concluded that such a claim does not constitute a

breach of this duty. See In re Coca-Cola Enters. ERISA Litig., No. 1:06-CV-

0953-TWT, 2007 WL 1810211, (N.D. Ga. June 19, 2007) (Thrash, J.) ("CCE");

Mellot v. ChoicePoint, Inc., 561 F. Supp. 2d 1305 (N.D. Ga. 2007) (Camp, J.);

Pedrazza v. Coca-Cola Co., 456 F. Supp. 2d 1262 (N.D. Ga. 2006) (Evans, J.);

Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310 (N.D. Ga. 2006) (Evans, J.).  After a careful examination of these decisions and Plaintiffs' arguments against the reasoning of these cases and its effort to distinguish the present action, the Court holds that Count I of Plaintiffs' complaint fails to state a claim as a matter of law and must be dismissed.

Plaintiffs assert that the prudence claim they allege is not based upon diversification and therefore is not excluded by 29 U.S.C. § 1104(a)(2). However, Plaintiffs' Response to the Defendants' Motion to Dismiss [61] states that "Plaintiffs' [Complaint] alleges that Defendants . . . breached their fiduciary duties under ERISA by *maintaining the Plan's huge investment in [Beazer] stock* . . . when they knew or should have known that the stock was an imprudent retirement investment."  (Pl.'s Response at 1 (emphasis added)). While an ERISA fiduciary's duty of prudence extends beyond diversifying the investments of a plan, Plaintiffs' claimed breach of this duty does not.  In Smith, the plaintiff alleged that defendants acted imprudently by "maintaining the Plan's pre-existing heavy investment in Delta securities when the stock no longer was a prudent investment for the Plan."  422 F. Supp. 2d at 1326.  Judge

14

Evans described plaintiff's pleading in that case as an attempt "to argue around

ERISA's diversification exemption by alleging that the [Plan's] heavy

investment in Delta securities was imprudent irrespective of the lack of

diversification." Id. at 1327. Judge Evans held that:

> At its core, however, Count I just amounts to another form of
> diversification argument. Section 1104(a)(2) speaks to such an
> argument, exempting not only the duty to diversify but also the
> duty of prudence to the extent it requires diversification. Therefore,
> regardless of Plaintiff's phraseology, a strict application of §
> 1104(a)(2) mandates dismissal of Count I . . .

Id.[7] The same is true for Plaintiffs' prudence allegations in this case.

Therefore, Count I of Plaintiffs' Complaint fails to state a claim as a matter of

law and is **DISMISSED**.[8]

---

[7] See also CCE, 2007 WL 1810211, *9 ("EIAP fiduciairies 'do not have a duty to diversity and do not act imprudently by not diversifying the assets of an EIAP.'" (quoting Smith, 422 F. Supp. 2d at 1325)); Pedrazza, 456 F. Supp. 2d at 1273 ("While ERISA generally provides that a fiduciary must diversity the investment of a plan, it also excuses that duty in the case of a fiduciary of an EIAP. Further, the duty of prudence is excused to the extent that it depends on diversification." (citations omitted)); Mellot, 561 F. Supp. 2d at 1312, 1313 ("Plaintiff's characterization of his claim as an 'artificial inflation' claim rather than a diversification claim is simply another form of a diversification argument. . . . Because the Court finds that Plaintiff's claim is a rebadged argument for diversification, a strict application of §1104(a)(2) ends the inquiry and requires dismissal of the claim.").

[8] Plaintiffs' argument that it was imprudent to continue to hold or further invest in Beazer stock in light of the facts alleged in the Complaint is persuasive. However, the Court will not stray from the plain language of 29 U.S.C. § 1104(a)(2) which precludes Plaintiffs from prevailing on the type of prudence claim it seeks to assert. See Lamie v. United States Tr., 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d

Furthermore, this Court will join Judges Evans, Camp, and Thrash in rejecting the rebuttable presumption framework set forth in <u>Moench v. Robertson</u>,[9] because it runs counter to the plain language of ERISA.  See <u>Smith</u>, 422 F. Supp. 2d at 1329-30; <u>CCE</u>, 2007 WL 1812011 at *9-10; <u>Pedraza</u>, 456 F. Supp. 2d at 1275-76; <u>Mellot</u>, 561 F. Supp. 2d at 1314.  Defendants' Motion to Dismiss [59] as to Count I of the Complaint is **GRANTED**.

## D.    Count II - Failure to Monitor Fiduciaries

Plaintiff cannot maintain a claim of failure to monitor without demonstrating that those to be monitored were acting imprudently.  The Court has held that the 401(k) Committee did not breach its fiduciary duty of prudence and therefore Plaintiffs' claim for failure to monitor must also fail. See <u>Smith</u>, 422 F. Supp. 2d at 1333 ("Plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting prudently."); <u>CCE</u>, 2007 WL 1812011 at *11 ("Because the Court has determined that the Plan's

---

1024 (2004) ("It is well-established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." (internal quotations omitted)).

[9] 62 F. 3d 553 (3d Cir. 1995).  The Third Circuit stated "that in the first instance, a [plan] fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."  <u>Id.</u> at 571.

16

investment in CCE stock was prudent as a matter of law . . . there can be no cause of action for failure to monitor a fiduciary's conduct with respect to that investment."); <u>Pedraza</u>, 456 F. Supp. 2d at 1278 ("Because [plaintiff's prudence claim] is not viable against the Assets Management Committee, it follows that it is not viable against the CEO Defendants who appointed them."); <u>Mellot</u>, 561 F. Supp. 2d at 1316 (same). Therefore, Defendants' Motion to Dismiss [59] as to Count II of the Complaint is **GRANTED**.

**E.      Count III - Failure to Disclose Information to Co-Fiduciaries**

Plaintiffs assert that the Company, McCarthy, and Brian Beazer ("the Disclosure Defendants") "possessed non-public information during the Class Period about the risks posed by Beazer stock, which they knew could be used by other fiduciaries of the Plan . . . to protect the Plan and its participants and beneficiaries." (Complaint at ¶ 255). Plaintiffs assert that disclosures should have been made to the Compensation Committee and the 401(k) Committee and by failing to do so, the Disclosure Defendants breached their fiduciary duties of loyalty, exclusive purpose, and prudence. Defendants have not responded directly to this Count, as their arguments and cases cited in their Brief [59-2] and Reply [67] relate to disclosure of information to plan participants and beneficiaries.

Judge Evans noted in <u>Smith</u>, that if members of the board of directors "had failed to disclose material information relating to Delta's financial health, it may be plausible to argue that they should be liable for failing to inform the Investment Committee." 422 F. Supp. at 1327. However, in that case the plaintiff's allegations of failure to disclose were too vague and conclusory to sustain a claim against the defendants. <u>Id.</u> The same cannot be said for Plaintiffs claims in this case. The allegations set forth in Plaintiffs' Complaint are sufficient at this stage to state a claim that the Disclosure Defendants possessed information that they had an obligation to share with the Compensation and 401(k) Committees. <u>See</u> <u>e.g.</u>, Complaint at ¶¶ 101, 104-05.

Other courts have also recognized that a fiduciary has a duty to disclose to other fiduciaries material information that it knew, but others did not, if necessary to protect the plan. In setting forth conclusions of law as to "Fiduciary Duties Under ERISA," one district court noted:

> 15. Even if not asked, ERISA fiduciaries must make "full and complete" disclosure and "communicate material facts affecting the interests of beneficiaries." <u>Anweiler v. American Elec. Power Serv. Corp.</u>, 3 F.3d 986, 991 (7th Cir.1993); <u>Bowerman v. Wal-Mart Stores, Inc.</u>, 226 F.3d 574, 590 (7th Cir.2000).

> 16. This duty to provide material information arises under ERISA § 404(a), 29 U.S.C. § 1104(a). <u>Bowerman</u>, 226 F.3d at 590. *This duty requires disclosure to other fiduciaries acting on behalf of the*

*plan's beneficiaries*. Glaziers and Glassworkers Union Local No. 252 Annuity Fund, 93 F.3d at 1182 (3rd Cir.1996); Midwest Community Health Service, Inc. v. American United Life Insurance Co., 255 F.3d 374, 379 & 375-6 (7th Cir.2001).

Keach v. U.S. Trust Co. N.A., 313 F. Supp. 2d 818, 864 (C.D. Ill. 2004)

(emphasis added); see also In re Enron Corp. Securities, Derivative & ERISA

Litig., 284 F. Supp. 2d 511, 662-63 (S.D. Tex. 2003) (finding that the complaint

stated a claim for defendants' failure to inform co-fiduciaries about the

company's actual financial status); In re WorldCom, Inc., 263 F. Supp. 2d 745,

765 (S.D.N.Y. 2003) ("When a corporate insider puts on his ERISA hat, he is

not assumed to have forgotten adverse information he may have acquired while

acting in his corporate capacity. Plaintiffs' allegation that [defendant] failed to

disclose to the Investment Fiduciary and the other investing fiduciaries material

information he had regarding the prudence of investing in WorldCom  stock is

sufficient to state a claim.").  Therefore Count III of Plaintiffs' Complaint

sufficiently states a claim against the Disclosure Defendants.  Defendants'

Motion to Dismiss [59] as to Count III is **DENIED**.

**F.      Count IV - Failure to Disclose Information to Plan Participants and Beneficiaries**

Plaintiffs allege that the Company, McCarthy, and the 401(k) Committee

Defendants (collectively, the "Communications Defendants") breached their

duty under ERISA "to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan," by not providing complete and accurate information to plan participants and beneficiaries.  (Complaint at ¶ 263).  ERISA requires that plan fiduciaries publish a summary plan description, an annual report, and a financial statement for the plan.  29 U.S.C. §§ 1021-31; 29 C.F.R. §§ 2520.101-2520.107.1.

Defendants argue that Plaintiffs are seeking to import into ERISA a non-existent duty to disclose non-public information to Plan participants, that even if such a duty exists, it is limited to disclosure of information about the plan, plan benefits, and plan expenses, and that requiring the kind of disclosure Plaintiffs seek would violate securities laws.

Defendants' argument is not without support.  The court in <u>Mellot</u>, held that plaintiff's claim of failure to disclose information to plan beneficiaries failed because

> there is no general fiduciary duty of disclosure under ERISA.  The Court agrees with the circuit courts that have addressed the issue of ERISA disclosure: ERISA's fiduciary duty standards should not be expanded to include disclosure of information that is not explicitly required under ERISA.  <u>See</u> <u>Sprague [v. General Motors Corp.]</u>, 133 F.3d [388, 405 (6th Cir. 1998)]; [Bd. of Trs. v.] <u>Weinstein</u>, 107 F.3d [139, 147 (2d Cir. 1997)]; <u>Faircloth [v. Lundy Packing</u>

> Co.], 91 F.3d [648, 657 (4thCir. 1996)]. To the extent an
> affirmative duty of disclosure exists, it is limited to the disclosure
> of information about the plan, plan benefits, or plan expenses. The
> preparation of SEC filings, even if misleading and incorporated by
> reference in required ERISA disclosures, is not a fiduciary act
> under ERISA.

Mellot, 561 F. Supp. 2d at 1318.

However, other decisions from this District have allowed such claims to proceed. In CCE, the foundation of two of the plaintiff's claims was that "Defendants violated their fiduciary duties by failing to disclose material, non-public information regarding CCE's . . . activities to the Plan's participants." 2007 WL 1810211 at *11. The court found that the defendants that were fiduciaries in regards to those claims "had a duty to disclose any fraudulent [acts] about which they knew or should have known." Id. at 14; see also Pedraza, 456 F. Supp. 2d at 1280-81 (reasoning that because SEC filings were incorporated into documents required by ERISA, granting a motion to dismiss without examining the SEC filings would be inappropriate); Hill v. BellSouth Corp., 313 F. Supp. 2d 1361, 1368-69 (finding that in some circumstances an ERISA fiduciary will have an affirmative duty to disclose information to plan beneficiaries beyond the traditional duty to disclose). Also,

AO 72A
(Rev.8/82)

this Court in <u>Woods</u>, joined several of its sister courts[10] in holding that

dismissal of a claim alleging a failure to fully inform plan participants at the

motion to dismiss stage would be inappropriate. 396 F. Supp. 2d at 1377.

Plaintiffs allege that Communication Defendants knew or should have

known that Beazer's financial condition was dangerous and its business

practices were improper. Plaintiffs also allege that Communication Defendants

made false statements about the Company's financial condition and its risk-

management process. (Complaint at ¶¶ 100-16). Plaintiffs allege that

misleading SEC disclosures were incorporated by reference in Beazer's Form

S-8 filing which was issued to employees and signed by McCarthy and Brian

Beazer, and that constitutes a sufficient fiduciary act at this stage of the trial.

(Pl.'s Response at 45 (citing, e.g., <u>Gee v. UnumProvident Corp.</u>, 2005 WL

534873, at * 16 (E.D. Tenn. Jan. 13, 2005). Based upon these allegations, the

Court cannot say that Plaintiffs have failed to state a claim against the

Communications Defendants in Count IV upon which relief can be granted.

_____

[10] This Court cited <u>In re AEP ERISA Litig.</u>, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004); <u>In re Excel Enegery, Inc. Securities, Derivative, & ERISA Litig.</u>, 312 F. Supp. 2d 1165, 1182 (D. Minn. 2004); <u>In re Elec. Data Sys. Corp. ERISA Litig.</u>, 305 F. Supp. 2d 658, 672-73 (E.D. Tex. 2004); <u>Stein v. Smith</u>; 270 F. Supp. 2d 157,174 (D. Mass. 2003). <u>Woods</u>, 396 F. Supp. 2d at 1377.

The Court also does not find that securities laws shield Defendants from their fiduciary duties under ERISA to plan participants. The Secretary of Labor addressed this argument in an *amicus curiae* brief filed in another ERISA proceeding, noting that

> Defendants' duty to "disclose or abstain" under the securities laws does not immunize them from a claim that they failed in their conduct as ERISA fiduciaries. To the contrary, while their Securities Act and ERISA duties may conflict in some respects, they are congruent in others, and there are certain steps that could have been taken that would have satisfied both duties to the benefit of the plans. First and foremost, nothing in the securities laws would have prohibited them from disclosing the information to other shareholders and the public at large, or from forcing Enron to do so. See Matter of Cady Roberts, 1961 WL 60638, at *3 (1961). The duty to disclose the relevant information to the plan participants and beneficiaries, which the Plaintiffs assert these Defendants owed as ERISA fiduciaries, is entirely consistent with the premise of the insider trading rules: that corporate insiders owe a fiduciary duty to disclose material nonpublic information to the shareholders and trading public. See id. (incorporating common law rule that insiders should reveal material inside information before trading) ....
>
> Second it would have been consistent with the securities law for the Committee to have eliminated Enron's stock as a participant option and as the employer match under the Savings Plan.... The securities rules do not require an individual never to make any decision based on insider information. To the contrary, the insider trading rules require corporate insiders to refrain from buying (or selling) stock if they have material, nonpublic information about the stock. Thus, the "disclose or abstain" securities law rule is entirely consistent with, and indeed contemplates a decision not to purchase a particular stock. See Condus v. Howard Sav. Bank, 781

> F. Supp. 1052, 1056 (D.N.J. 1992) (it is perfectly legal to retain
> stock based on inside information; violation of insider trading
> requires buying or selling of stock). It would have been entirely
> consistent with securities laws for the fiduciaries to have
> eliminated Enron stock as a participant option and the employer
> match.... Finally, another option would have been to alert the
> appropriate regulatory agencies, such as the SEC and the
> Department of Labor, to the misstatements.

In re Enron Corp., 284 F. Supp. 2d at 566.  Therefore, Defendants' argument

that requiring the type of disclosure Plaintiff seeks would violate securities laws

is not persuasive.

Based on the foregoing, Defendants' Motion to Dismiss [59] as to Count

IV is **DENIED**.

## G.    Count V - Co-Fiduciary Liability

Count V of Plaintiffs' Complaint alleges that all Defendants were either

named or *de facto* fiduciaries under ERISA and thus were bound by the duties

of loyalty, exclusive purpose, and prudence.  In addition to liability under other

provisions, ERISA imposes liability for breach of fiduciary responsibility of

another fiduciary with respect to the same plan in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to
> conceal, an act or omission of such other fiduciary, knowing such
> act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title
> in the administration of his specific responsibilities which give rise

24

to his status as a fiduciary, he has enabled some other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

The Court has found that Plaintiffs have sufficiently plead primary claims of breach of fiduciary duty in Counts III and IV of the Complaint, involving the Company, Ian McCarthy, Brian Beazer, and the 401(k) Committee Defendants. Plaintiffs have not adequately plead any primary claims against the Compensation Committee Defendants and therefore cannot adequately plead any co-fiduciary liability as to those Defendants. 29 U.S.C. § 1105(a). The Court finds that Plaintiffs' Complaint adequately pleads that the remaining Defendants knew of the Company's problems and improper practices, but failed to take any effort to remedy existing breaches of fiduciary duty under ERISA. Therefore, at a minimum Plaintiff has adequately alleged co-fiduciary liability under 29 U.S.C. § 1105(a)(3). Defendants' Motion to Dismiss [59] as to Count V is **GRANTED** as to the Compensation Committee Defendants, and it is otherwise **DENIED**.

AO 72A
(Rev.8/82)

### III. Conclusion

Based on the foregoing, Defendants' Motion to Dismiss [59] is

**GRANTED IN PART AND DENIED IN PART**.  Counts I and II of Plaintiffs

Complaint are **DISMISSED**, and all claims against the Compensation

Committee Defendants[11] are **DISMISSED**.  The remaining parties shall submit

a proposed scheduling order to the Court within fourteen (14) days of the

entry of this Order.

**SO ORDERED**, this __2nd__ day of April, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[11]The members of the Compensation Committee who are named as Defendants in this action are: Katie J. Bayne, Larry T. Solari, and Stephen P. Zelnak, Jr.  Each of these Defendants and The Compensation Committee of the Board of Directors of Beazer Homes, USA, Inc. are **DISMISSED** from this action.

AO 72A
(Rev.8/82)